# Exhibit (A)

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Gila, Inc. *d/b/a MUNICIPAL SERVICES BUREAU*
DOES 1 to 25

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Carl A. Wescott

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* 400 McAllister<br>San Francisco, CA 94102<br>San Francisco Superior Court<br>Civic Center Courthouse<br>400 McAllister Street, Room 103<br>San Francisco CA 94102-4514 | **CASE NUMBER:**<br>*(Número del Caso):* **CGC-17-562529** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Carl A. Wescott, PO Box 190875, San Francisco, CA 94119

| DATE: **NOV 1 6 2017** | Clerk, by | , Deputy |
|---|---|---|
| *(Fecha)* | CLERK OF THE COURT *(Secretario)* DE LA VEGA-NAVARRO, Rossaly | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Carlos E. Vera

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☑ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*  4/16/18

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov



1  Carl A. Wescott
2  PO Box 190875
   San Francisco, CA 94119
3  *in propria persona*
   +1 415 335 5000
4

5              SUPERIOR COURT OF CALIFORNIA

6               COUNTY OF SAN FRANCISCO

7

8  CARL A. WESCOTT                    Case No.  CGC-17-562529

9         Plaintiff,
                                      FIRST AMENDED COMPLAINT FOR
10    vs.                             BREACH OF CONTRACT, INTENTIONAL
                                      INFLICTION OF EMOTIONAL DISTRESS,
11 GILA, INC d/b/a MUNICIPAL SERVICES BREACH OF THE COVENANT OF GOOD
   BUREAU; CARLSON & MESSER LLP,      FAITH AND FAIR DEALING, FRAUD,
12 TAMAR GABRIEL & DAVID KAMINSKY     VIOLATION OF THE FAIR DEBT
                                      COLLECTION PRACTICES ACT,
13    Defendant + DOES 1 to 25        VIOLATION OF THE ROSENTHAL ACT,
14                                    and CIVIL CAUSE FOR FRAUDULENT
                                      INFORMATION RETURN (26 U.S. Code §
15                                    7434)
16

17 **The Parties**

18

19   1.  Plaintiff, Carl A. Wescott, an individual, has resided in the San Francisco, California,

20       Bay Area for many years and is currently in San Francisco.

21   2.  Defendant, Gila Inc. (DBA Municipal Services Bureau) is a private company in Austin,

22

23       TX, doing business as a debt collection company for third party debt recovery, including

24       for the two related parties below.  Gila Inc. has since been acquired by Navient LLC, a

25       Delaware company.

26 **FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL
   INFLICTION OF EMOTIONAL DISTRESS, BREACH OF THE COVENANT OF
27 GOOD FAITH AND FAIR DEALING, FRAUD, VIOLATION OF THE FAIR DEBT
   COLLECTION PRACTICES ACT, VIOLATION OF THE ROSENTHAL ACT, and
28 CIVIL CAUSE FOR FRAUDULENT INFORMATION RETURN (26 U.S. Code § 7434)**

2

3.  Defendant Carlson & Messer, LLP is a law firm and limited liability partnership with its principal place of business in Los Angeles, California.

4.  Defendant Tamar Gabriel ("Gabriel") is a resident of California and an associate attorney at Carlsen & Messer and personally participated in the tortious conduct complained of herein.

5.  Defendant David Kaminski ("Kaminski") is resident of California and a Partner in Carlsen & Messer and personally participated in the tortious conduct complained of herein.

6.  Gila, Carlson & Messer LLP and, because of the nature of their practices, Gabriel and Kaminski are all debt collectors within the meaning of the Federal Debt Collection Practices Act, 15 USC 1692 et seq. Gila is a consumer debt collection company and Carlson & Messer, Gabriel and Kaminski all specialize in representing debt collectors and debt collection law firms and, in the process; validating, vindicating and collecting the underlying consumer debts as well as punishing, harassing and otherwise retaliating against consumers who defend themselves against predatory debt collection practices.

7.  Related party, City of San Francisco is a California Municipal Corporation acting by and through its agents including the San Francisco Mass Transit Authority ("SFMTA").

8.  Related party, SFMTA is a state agency created by the consolidation of the San Francisco Municipal Railway, the Department of Parking and Traffic and the Taxicab Commission.

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD, VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, VIOLATION OF THE ROSENTHAL ACT, and CIVIL CAUSE FOR FRAUDULENT INFORMATION RETURN (26 U.S. Code § 7434)**

9. The true names and capacities, whether individual, corporate, associate, or otherwise of defendants named herein as Does 1 through 25, inclusive, are unknown to plaintiff who therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to show the true names and capacities of these defendants when the same have been ascertained. Plaintiff is informed and believes that each fictitiously named defendant is responsible in law and in fact for the obligations alleged herein. Plaintiff is informed and believes and thereon alleges that at all relevant times each of the defendants was acting within the scope and course of his or her agency and employment.

### Jurisdiction

10. Jurisdiction of this Court is proper given that the original Federal lawsuit against Defendant Gila Inc had a San Francisco jurisdiction which resulted in the breached settlement agreement, was proper pursuant to 28 USC 157(b)(1). That matter arose under the Chapter 7 Bankruptcy Court case 16-10975-AJ-7 in this district. Further, the breached settlement agreement states "This Agreement shall be governed by California law, and any action to enforce this Agreement shall be brought only in California."

### Original Matter which created Liability for Defendant and Related parties.

11. This is a case about a Creditor that ignored a debtor's automatic stay; engaged in predatory and unlawful debt collection practices; purported to settle and constructively admitted liabilities in connection therewith; and then serially breached the parties' settlement agreement despite an express warning by the Plaintiff of the serious

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD, VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, VIOLATION OF THE ROSENTHAL ACT, and CIVIL CAUSE FOR FRAUDULENT INFORMATION RETURN (26 U.S. Code § 7434)**

consequential damages flowing from their breach. The creditor performed all these tortious and unconscionable actions utilizing the expert services of vampiric attorney debt-collectors who are now co-defendants. The unreasonable, malicious and sadistically harassing actions recounted herein were expressly and consciously taken to retaliate against Plaintiff Wescott for filing Bankruptcy; not paying his consumer debt; and asserting his consumer rights. The Creditor and its lawyers sought to make an example of Plaintiff Wescott as part of a scorched earth policy to punish debtors for not paying their consumer debts.

12. The Plaintiff filed the above-named Chapter 7 Bankruptcy Court case on November 14th, 2016. An Order for Relief was entered in this case on November 14th, 2016, pursuant to 11 USC 301 thus triggering an automatic stay pursuant to 11 USC 362(a) of all collection and legal action against the Plaintiff. An Order of Discharge was entered on February 14th, 2017 pursuant to 11 USC 727 thus discharging and voiding Plaintiff's pre-petition debt.

10. Related parties City of San Francisco and SFMTA were provided official notice of the Plaintiff's bankruptcy filing at the time of filing. Despite this notice, Related Parties including their agent Gila, Inc., aggressively sought to collect the pre-petition debt referenced in the Plaintiff's exhibits. The Defendants' efforts included harassing correspondence violating the Automatic Stay and later the Order of Discharge.

11. The Defendant's (and Related Parties') collection efforts also violate the Fair Debt Collection Practices Act 15 USC 1692 et seq *Garfield v. Ocwen Loan Servicing*, No. 15-527 (2nd Cir. 2016).

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD, VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, VIOLATION OF THE ROSENTHAL ACT, and CIVIL CAUSE FOR FRAUDULENT INFORMATION RETURN (26 U.S. Code § 7434)**

12. The Defendant's wrongful and illegal conduct caused the Plaintiff to experience worries, concerns and hardships outside the course of this filing. The Defendant was chargeable with knowledge of the fact that the Plaintiff was experiencing personal hardship as the result of a divorce and business reverses. The circumstances surrounding the Defendant's violation of the automatic stay would have placed any reasonable person on notice that the Plaintiff/debtor would experience hardship and emotional harm and the Plaintiff did in fact suffer severe emotional distress stemming from the Defendant's fraud and violations of the automatic stay.

### The Contract that was Breached

13. On September 14th, 2017 Plaintiff and Defendant reached a confidential settlement agreement (without Defendant formally admitting liability). Plaintiff will endeavor to honor the confidentiality of the contract as per his agreement, but cannot move forward in prosecuting the breach of contract without mentioning a few basic details of the contract. Because of the confidentiality provision, Plaintiff will not attach the contract to this complaint. The Plaintiff will provide it in discovery to the Defendants and also plans to use the settlement agreement as evidence in trial.

14. Though Defendant did not admit liability, the main issue in Plaintiff's original lawsuit was the Defendant-caused emotional distress that caused physical sickness and trips to doctors and thus medical expenses.

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD, VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, VIOLATION OF THE ROSENTHAL ACT, and CIVIL CAUSE FOR FRAUDULENT INFORMATION RETURN (26 U.S. Code § 7434)**

15. In the written contract Defendant Gila Inc. agreed to pay Plaintiff Wescott $2500 within 20 days of September 14th, 2017.

16. On Saturday September 16th, 2017 Plaintiff Wescott reached a deal to use the incoming monies to pay off a debt to Wayne Stauble in a way that would save Plaintiff either $11,100 or $12,350 (depending on the interpretation of taxation and income). Mr. Stauble needed funds badly for medical issues.

17. Plaintiff Wescott asked Defendant Gila's attorney and agent Gabriel of Carlson how the payment would occur several times over the 20 day period and could not get an answer.

18. Plaintiff Wescott informed Gabriel twice about the loss he would incur if he did not get the settlement funds on time.

19. Rather than issue the promised check, Defendant Gila Inc, through agents and attorneys Carlsen, Gabriel and Kaminski demanded private, personal, unnecessary information from the Plaintiff including his social security number. Given that Defendant Gila had already harassed him repeatedly and given the numerous complaints to the BBB and lawsuits against Defendant Gila, Plaintiff Wescott was extremely uncomfortable about the notion of providing personal private information to the party that had abused him to the point of physical sickness. Further, settlements for the infliction of physical sickness and for medical bills are non-taxable, and thus there was no need for Defendant Gila to insist on having this information.

20. When it was clear that Gila Inc. could fail to perform the agreement, Plaintiff Wescott suggested several solutions to Gabriel. Plaintiff Wescott was genuinely interested in implementing the parties' settlement and only reluctantly pursued remedies for breach.

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD, VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, VIOLATION OF THE ROSENTHAL ACT, and CIVIL CAUSE FOR FRAUDULENT INFORMATION RETURN (26 U.S. Code § 7434)**

21. Plaintiff Wescott also informed the agent for the Related Parties the lack of performance by Defendant Gila Inc and their attorneys and tried to work out solutions with them, including at least one solution that Ms. Colabianchi, attorney and agent for the Related Parties, thought was reasonable.

22. Unfortunately, Gila breached the agreement. The time to pay the settlement passed and Plaintiff Wescott suffered additional losses due to this breach.

23. Since that time period, there were many more promises to pay by Gabriel and then Kaminski. It is only now that the Plaintiff has realized that all of them were a ruse and part of a game to torture him. The logic is very simple. Gabriel and Kaminski are attorneys and thus have some level of competency. If they actually intended to deliver a check – later changed to a money order – they could do so. A high school student who is 6 years behind in reading ability (junior high or late elementary school level education) could easily complete the task of mailing a money order. No competent professional would promise to do so a dozen times or more over 4 or 5 or more months and not be able to perform a simple task like that. There is no chance that the Defendants ever intended to perform on this Settlement Agreement.

**Pattern of Fraudulent Promises**

24. From the beginning of October, 2017 to the day of filing this now Amended Complaint under CCP 472, (March 20th, 2018) Gila, through attorney Gabriel and her supervisor, Carlson partner Kaminski reassured Plaintiff Wescott on at least 15 occasions that Gila

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD, VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, VIOLATION OF THE ROSENTHAL ACT, and CIVIL CAUSE FOR FRAUDULENT INFORMATION RETURN (26 U.S. Code § 7434)**

1    would remedy its breach and perform under the terms of the parties' contract:

2    (Collectively "Gila's False Promises")

3    25. Many of those times are documented in email and some of the communications

4    themselves are in email.

5

6    26. Conjunctively, Gila, through Carlson attorneys Gabriel and Kaminski repeatedly

7    exercised its contractual discretion in a manner exquisitely calculated to deprive Wescott

8    of the benefit of the parties' settlement contract. For example, Gabriel and Kaminski

9    were aware of the fact that Plaintiff Wescott was struggling to emerge from an interlude

10   of protracted homelessness and that he did not have an active bank account. They were

11   made expressly aware of the fact that a check drawn on a regional bank would be

12   impossible for Plaintiff Wescott to cash. Gabriel insisted in attempting to pay Plaintiff

13   Wescott with a check drawn on a local Delaware bank, that they knew the Plaintiff could

14   not cash. Gabriel made sure to send it, the one time she sent it, as part of the torture,

15

16   when she had been informed Plaintiff was away from San Francisco.

17   27. Even though Gila could have costlessly paid with secured funds or with a check drawn on

18   a major bank, Gabriel acted in a manner coolly calculated to ensure that Plaintiff Wescott

19   could not access the funds that they, in effect, pretended to offer to pay. These acts were

20   undertaken to punish Plaintiff Wescott and retaliate against him for not paying the

21   underlying consumer debts and exercising his rights under the United States Bankruptcy

22

23   Code.

24   28. Although GILA failed and refused to make the promised contractual payment for $2,500

25   in 2017, GILA caused to be issued, in January 2018, a false 1099 for the Plaintiff

26   **FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL**
     **INFLICTION OF EMOTIONAL DISTRESS, BREACH OF THE COVENANT OF**

27   **GOOD FAITH AND FAIR DEALING, FRAUD, VIOLATION OF THE FAIR DEBT**
     **COLLECTION PRACTICES ACT, VIOLATION OF THE ROSENTHAL ACT, and**

28   **CIVIL CAUSE FOR FRAUDULENT INFORMATION RETURN (26 U.S. Code § 7434)**

9

inaccurately and wrongfully signifying his reception of $2,500 in taxable income from GILA ("the False 1099"). The False 1099 was misleading in at least two respects: (1) the Plaintiff received no monies from GILA in 1099 and, (2) the money paid to the Plaintiff for emotional distress would have been non-taxable.

29. GILA acknowledged its "error" in issuing the False 1099 and promised, in conversations with the Plaintiff, on at least six occasions to fix the error. To the date of filing, GILA has failed and refused to correct the False 1099.

### Count I – 26 USC 7434 – Civil Damages For False Information Return - GILA

30. Plaintiff realleges and reincorporates preceding paragraphs 1-26.

31. The False 1099 is a False Information Return within the meaning of 26 USC 7434.

32. Per 7434 (b) the Plaintiff is entitled to minimum statutory damages of $5,000 for the filing of the False Information Return, unless his costs, fees and actual damages exceed $5000.

33. Per 7434 (e) the Plaintiff is entitled to a Judicial Finding of the correct amount that should have issued in 2017 which in this case would be zero.

### Count II Breach of Contract – Gila

34. Plaintiff realleges and reincorporates preceding paragraphs 1-26.

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD, VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, VIOLATION OF THE ROSENTHAL ACT, and CIVIL CAUSE FOR FRAUDULENT INFORMATION RETURN (26 U.S. Code § 7434)**

10

32. Defendant Gila (and DOES 1 to 25) have breached their contract to pay the plaintiff, who has been damaged thereby in the sum of $11,100 (or $12,350 – to be determined at trial) plus interest at the legal rate from and after the date due according to proof.

## Count III  Fraud – All Defendants

33. Plaintiff realleges and reincorporates preceding paragraphs 1-26.

34. Gila's False Promises were made with no intent to perform. Gila's objective in making Gila's False Promises was to delay Plaintiff Wescott's realization that Gila did not intend to perform until Plaintiff Wescott, through mounting personal hardships would be unable to enforce the parties' contract as a practical matter.

35. Gila intended to induce Plaintiff Wescott to rely on Gila's False Promises in the belief that payment was imminent when it was actually chimerical.

36. Plaintiff Wescott, believing he was communicating with lawyers who were acting in conformity with Business & Professions 6068, reasonably relied on Gila's False Promises.

37. As a result of his reasonable reliance on Gila's False Promises, Plaintiff Wescott was damaged by loss of contractual benefits and specifically the loss of the opportunity to favorably compromise his indebtedness to Stauble.

38. Their lack of performance caused the Plaintiff many other hardships, including forgoing a trip that a friend was going to pay for (as Plaintiff was concerned he could not eat), and the basic necessities of life that a housed individual may take for granted, but make a

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD, VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, VIOLATION OF THE ROSENTHAL ACT, and CIVIL CAUSE FOR FRAUDULENT INFORMATION RETURN (26 U.S. Code § 7434)**

11

very significant quality of life impact for the poor. The Plaintiff has been unable to buy decent clothes he planned to buy so he could interview for jobs, and thus has not interviewed, continuing to think based on Gila's promises that the elusive check was always just around the corner.

39. Defendants' acts were malicious, fraudulent and oppressive, justifying an award of punitive damages so that Defendants will not engage in such conduct in the future and make an example of them.

**Count IV Breach of the Covenant of Good Faith & Fair Dealing – Gila**

40. Plaintiff realleges paragraphs 1-26 as if fully set out herein.

41. Plaintiff Wescott performed all that was required of him in the parties' settlement agreement.

42. The Defendants continually and continuously exercised their contractual discretion in a manner calculated to frustrate Plaintiff Wescott and deny him his contractual benefits. Specifically, attorneys Gabriel and Kaminski responded inconsistently and sporadically to communications for the purpose of delaying payment and unreasonably refused to pay Plaintiff Wescott in secured monies or a check drawn on a major bank (initially). Then, after (knowingly falsely) agreeing to pay by money order, Mr. Kaminski continued to make promise after promise as part of the conspiracy among Defendants to torture the Plaintiff.

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD, VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, VIOLATION OF THE ROSENTHAL ACT, and CIVIL CAUSE FOR FRAUDULENT INFORMATION RETURN (26 U.S. Code § 7434)**

12

43. The Plaintiff was harmed by the Defendants' actions by losing his promised contractual benefits as well as the opportunity to favorably settle with Stauble.

44. Furthermore, the Plaintiff has not interviewed for work in these 5 months, believing that he could buy some clothes "any day now". The Plaintiff has imputed income of $100,000 per month in his marital dissolution based on his past earnings.

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD, VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, VIOLATION OF THE ROSENTHAL ACT, and CIVIL CAUSE FOR FRAUDULENT INFORMATION RETURN (26 U.S. Code § 7434)**

THIS IS A PLACEHOLDER

13

## Count IV Violation of Fair Debt Collection Practices Act – All Defendants

45. Plaintiff realleges paragraphs 1-26 as if fully set out herein.

46. In making Gila's False Promises and denying Plaintiff Wescott his contractual benefits, the Defendants, both debt collectors, have engaged in acts of harassment within the meaning of 15 USC 1692 Section 808. The Defendants have also made false and misleading statements within the meaning of 15 USC 1692 Section 806 including, without limitation of the foregoing, Gila's False Promises.

47. The conduct of Gila and Carlson represents a seamless web of harassment against the Plaintiff, from the violation of his automatic stay, through harassing calls, through fraudulent and chimerical "settlements" and offering contractual "payments" in a form the Defendants knew would be useless to the Plaintiff.

## Count V Rosenthal Act - All Defendants

48. Plaintiff realleges paragraphs 1-26 as if fully set out herein.

49. The conduct of Gila and Carlson as set out in paragraphs 33-39 violates the Rosenthal Act, CCP 1788 et seq.

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD, VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, VIOLATION OF THE ROSENTHAL ACT, and CIVIL CAUSE FOR FRAUDULENT INFORMATION RETURN (26 U.S. Code § 7434)**

14

**Count VI Intentional Infliction of Emotional Distress – All Defendants**

50. Plaintiff realleges paragraphs 1-26 as if fully set out herein.

51. The Defendants in this case knew that Plaintiff Wescott was battling homelessness and trying to reestablish business and professional ties that would assist him in rebuilding his life and supporting his minor children.

52. Plaintiff Wescott was at one point a multi-millionaire for whom $2,500 would have represented an intriguing Cabernet Sauvignon at a business lunch. At this point in the Plaintiff's life, $2,500 represents the difference between shelter and homelessness and the ability to reestablish credibility with associates who can help him back on his feet. One such associate was Stauble.

53. The Plaintiff has racked up further support costs for his ex-wife and his children of approximately $325,000 over the time since the settlement agreement was signed, and not interviewing, waiting for the ability to buy some clothes and look professional.  This added financial pressure has resulted in sleepless nights and emotional breakdowns.

54. Accordingly the Defendants knew they were inflicting extreme emotional distress on the Plaintiff by making successive promises to pay and then either not doing so or doing so in a manner that made it impossible for the Plaintiff to access the promised funds. The Defendants' false assurances and delays were intended to serve and did in fact serve as a form of mental torture.

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD, VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, VIOLATION OF THE ROSENTHAL ACT, and CIVIL CAUSE FOR FRAUDULENT INFORMATION RETURN (26 U.S. Code § 7434)**

55. The Plaintiff sustained extreme emotional distress including fear, anxiety and humiliation as he was serially deprived of desperately needed resources.

[prayer for relief on following PAGE]

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD, VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, VIOLATION OF THE ROSENTHAL ACT, and CIVIL CAUSE FOR FRAUDULENT INFORMATION RETURN (26 U.S. Code § 7434)**

16

## PRAYER FOR RELIEF

WHEREFORE PLAINTIFF PRAYS for judgment against defendants, and each of them as follows:

1. As to Count I For a Civil Cause of Action under 26 USC 7434, for an award of the damages to Plaintiff (the statutory minimum is $5,000), to be proven at trial, plus a judicial finding that the correct amount earned by Carl Wescott for the year 2017 is $0.

2. As to Count II, Breach of Contract, the sum of $2,500 as promised in the original agreement, plus an amount in expectancy damages of $11,100 or $12,350 based on the Stauble transaction, in an amount to be proved at trial.

2. As to Count III, for Fraud, the sum of $2,500 as promised in the original agreement, plus an amount in expectancy damages of $11,100 or $12,350 based on the Stauble transaction, in an amount to be proved at trial. In addition, the imposition of exemplary or punitive damages to deter Defendants from engaging in acts of fraud in the future.

3. As to Count IV, for Breach of the Covenant of Good Faith & Fair Dealing, the sum of $2,500 as promised in the original agreement, plus an amount in expectancy damages of $11,100 or $12,350 based on the Stauble transaction, in an amount to be proved at trial, plus an amount to compensate Plaintiff for his lost income since September 2017.

4. As to Count V, for violation of the Fair Debt Collection Practices Act, the sum of $1,000 for each statutory violation proved at trial as well as costs and, if applicable, attorney's fees.

5. As to Count VI for violation of the Rosenthal Act, statutory damages in the amount of $1,000 for each statutory violation proved at trial as well as costs, fees and an amount in exemplary or punitive damages to deter Defendants' from violations of the Rosenthal Act in the future.

6. As to Count VII for Intentional Infliction of Emotional Distress, an amount sufficient to compensate the Plaintiff for his mental anguish in an amount to be proved at trial, in excess of $100,000.

7. For such other and further relief as the court may deem just and proper, including any injunctive relief necessary to get Defendants to fix their false, wrongful, and fraudulent 1099.

_____
Carl Wescott, *Pro Se*

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD, VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, VIOLATION OF THE ROSENTHAL ACT, and CIVIL CAUSE FOR FRAUDULENT INFORMATION RETURN (26 U.S. Code § 7434)**



**Superior Court of California, County of San Francisco**
**Alternative Dispute Resolution**
**Program Information Package**



> The plaintiff must serve a copy of the ADR information package
> on each defendant along with the complaint. (CRC 3.221(c))

## WHAT IS ADR?

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to court.

## WHY CHOOSE ADR?

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial." (Local Rule 4)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

## HOW DO I PARTICIPATE IN ADR?

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet) at the clerk's office located at 400 McAllister Street, Room 103;
- Indicating your ADR preference on the Case Management Statement (also attached to this packet); or
- Contacting the court's ADR office (see below) or the Bar Association of San Francisco's ADR Services at 415-782-8905 or www.sfbar.org/adr for more information.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA  94102
415-551-3869

*Or, visit the court ADR website at www.sfsuperiorcourt.org*

The San Francisco Superior Court offers different types of ADR processes for general civil matters; each ADR program is described in the subsections below:

## 1) SETTLEMENT CONFERENCES

The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute early in the litigation process.

**(A) THE BAR ASSOCIATION OF SAN FRANCISCO (BASF) EARLY SETTLEMENT PROGRAM (ESP):** ESP remains as one of the Court's ADR programs (see Local Rule 4.3) but parties must select the program – the Court no longer will order parties into ESP.

**Operation:** Panels of pre-screened attorneys (one plaintiff, one defense counsel) each with at least 10 years' trial experience provide a minimum of two hours of settlement conference time, including evaluation of strengths and weakness of a case and potential case value. On occasion, a panelist with extensive experience in both plaintiff and defense roles serves as a sole panelist. BASF handles notification to all parties, conflict checks with the panelists, and full case management. The success rate for the program is 78% and the satisfaction rate is 97%. Full procedures are at: www.sfbar.org/esp.

**Cost:** BASF charges an administrative fee of $295 per party with a cap of $590 for parties represented by the same counsel. Waivers are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see enclosed brochure.

**(B) MANDATORY SETTLEMENT CONFERENCES:** Parties may elect to apply to the Presiding Judge's department for a specially-set mandatory settlement conference. See Local Rule 5.0 for further instructions. Upon approval of the Presiding Judge, the court will schedule the conference and assign the case for a settlement conference.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO,** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending.

**Operation:** Experienced professional mediators, screened and approved, provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. The BASF website contains photographs, biographies, and videos of the mediators as well as testimonials to assist with the selection process. BASF staff handles conflict checks and full case management. Mediators work with parties to arrive at a mutually agreeable solution. The success rate for the program is 64% and the satisfaction rate is 99%.

**Cost**: BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the administrative fee are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see the enclosed brochure.

**(B) JUDICIAL MEDIATION** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at anytime throughout the litigation process.

**Operation**: Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge for the Judicial Mediation program.

**(C) PRIVATE MEDIATION**: Although not currently a part of the court's ADR program, parties may elect any private mediator of their choice; the selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

## 3) ARBITRATION

An arbitrator is neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION**: When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial.

**Operation**: Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.2 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after the filing of a complaint. There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION**: Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF TO ENROLL IN THE LISTED BASF PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF.



# Superior Court of California
## County of San Francisco



HON. TERI L. JACKSON
PRESIDING JUDGE

### Judicial Mediation Program

JENIFFER B. ALCANTARA
ADR ADMINISTRATOR

The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to personal injury, professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial Mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable Suzanne R. Bolanos
The Honorable Angela Bradstreet
The Honorable Andrew Y.S. Cheng
The Honorable Samuel K. Feng
The Honorable Curtis E.A. Karnow
The Honorable Charlene P. Kiesselbach

The Honorable Stephen M. Murphy
The Honorable Joseph M. Quinn
The Honorable James Robertson, II
The Honorable John K. Stewart
The Honorable Richard B. Ulmer, Jr.
The Honorable Mary E. Wiss

Parties interested in Judicial Mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program and deliver a courtesy copy to Department 610. A preference for a specific judge may be indicated on the request, and although not guaranteed due to the judge's availability, every effort will be made to fulfill the parties' choice for a particular judge. Please allow at least 30 days from the filing of the form to receive the notice of assignment. The court's Alternative Dispute Resolution Administrator will facilitate assignment of cases that qualify for the program.

Note: Space and availability is limited. Submission of a stipulation to Judicial Mediation does *not* guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3869

| EJT-001-INFO | Expedited Jury Trial Information Sheet |

This information sheet is for anyone involved in a civil lawsuit who will be taking part in an **expedited jury trial**—a trial that is shorter and has a smaller jury than a traditional jury trial.

> You can find the law and rules governing expedited jury trials in Code of Civil Procedure sections 630.01–630.29 and in rules 3.1545–3.1553 of the California Rules of Court. You can find these at any county law library or online. The statutes are online at *http://leginfo.legislature.ca.gov/faces/codes.xhtml*. The rules are at *www.courts.ca.gov/rules.*

**(1) What is an expedited jury trial?**

An expedited jury trial is a short trial, generally lasting only one or two days. It is intended to be quicker and less expensive than a traditional jury trial.

As in a traditional jury trial, a jury will hear your case and will reach a decision about whether one side has to pay money to the other side. An expedited jury trial differs from a regular jury trial in several important ways:

- **The trial will be shorter.** Each side has 5 hours to pick a jury, put on all its witnesses, show the jury its evidence, and argue its case.

- **The jury will be smaller.** There will be 8 jurors instead of 12.

- **Choosing the jury will be faster.** The parties will exercise fewer challenges.

**(2) What cases have expedited jury trials?**

- **Mandatory expedited jury trials.** All limited civil cases—cases where the demand for damages or the value of property at issue is $25,000 or less—come within the *mandatory expedited jury trial* procedures. These can be found in the Code of Civil Procedure, starting at section 630.20. Unless your case is an unlawful detainer (eviction) action, or meets one of the exceptions set out in the statute, it will be within the expedited jury trial procedures. These exceptions are explained more in ⑦ below.

  - **Voluntary expedited jury trials.** If your civil case is not a limited civil case, or even if it is, you can choose to take part in a *voluntary expedited jury trial*, if all the parties agree to do so. Voluntary expedited jury trials have the same shorter time frame and smaller jury that the

mandatory ones do, but have one other important aspect—all parties must waive **their** rights to appeal. In order to help keep down the costs of litigation, there are no appeals following a *voluntary* expedited jury trial except in very limited circumstances. These are explained more fully in ⑨.

**(3) Will the case be in front of a judge?**

The trial will take place at a courthouse and a judge, or, if you agree, a temporary judge (a court commissioner or an experienced attorney that the court appoints to act as a judge) will handle the trial.

**(4) Does the jury have to reach a unanimous decision?**

No. Just as in a traditional civil jury trial, only three-quarters of the jury must agree in order to reach a decision in an expedited jury trial. With 8 people on the jury, that means that at least 6 of the jurors must agree on the verdict in an expedited jury trial.

**(5) Is the decision of the jury binding on the parties?**

Generally, yes, but not always. A verdict from a jury in an expedited jury trial is like a verdict in a traditional jury trial. The court will enter a judgment based on the verdict, the jury's decision that one or more defendants will pay money to the plaintiff or that the plaintiff gets no money at all.

But parties in an expedited jury trial, like in other kinds of trials, are allowed to make an agreement before the trial that guarantees that the defendant will pay a certain amount to the plaintiff even if the jury decides on a lower payment or no payment. That agreement may also put a cap on the highest amount that a defendant has to pay, even if the jury decides on a higher amount. These agreements are known as "high/low agreements." You should discuss with your attorney whether you should enter into such an agreement in your case and how it will affect you.

**(6) How else is an expedited jury trial different?**

The goal of the expedited jury trial process is to have shorter and less expensive trials.

- The cases that come within the mandatory expedited jury trial procedures are all limited civil actions, and they must proceed under the limited discovery and

Judicial Council of California, www.courts.ca.gov
Revised July 1, 2016, Mandatory Form
Code of Civil Procedure, § 630.01–630.10
Cal. Rules of Court, rules 3.1545–3.1553

**Expedited Jury Trial Information Sheet**

EJT-001-INFO, Page 1 of 2 ⟹

**EJT-001-INFO**    Expedited Jury Trial Information Sheet

pretrial rules that apply to those actions. See Code of Civil Procedure sections 90–100.

○   The voluntary expedited jury trial rules set up some special procedures to help those cases have shorter and less expensive trials. For example, the rules require that several weeks before the trial takes place, the parties show each other all exhibits and tell each other what witnesses will be at the trial. In addition, the judge will meet with the attorneys before the trial to work out some things in advance.

The other big difference is that the parties in either kind of expedited jury trial can make agreements about how the case will be tried so that it can be tried quickly and effectively. These agreements may include what rules will apply to the case, how many witnesses can testify for each side, what kind of evidence may be used, and what facts the parties already agree to and so do not need the jury to decide. The parties can agree to modify many of the rules that apply to trials generally or to any pretrial aspect of the expedited jury trials.

(7)    **Do I have to have an expedited jury trial if my case is for $25,000 or less?**

Not always.  There are some exceptions.

○   The mandatory expedited jury trial procedures do not apply to any unlawful detainer or eviction case.

○   Any party may ask to opt out of the procedures if the case meets any of the criteria set out in Code of Civil Procedure section 630.20(b), all of which are also described in item 2 of the *Request to Opt Out of Mandatory Expedited Jury Trial* (form EJT-003). Any request to opt out must be made on that form, and it must be made within a certain time period, as set out in Cal. Rules of Court, rule 3.1546(c). Any opposition must be filed within 15 days after the request has been served.

---
*The remainder of this information sheet applies only to voluntary expedited jury trials.*

---

(8)    **Who can take part in a voluntary expedited jury trial?**

The process can be used in any civil case that the parties agree may be tried in one or two days. To have a voluntary expedited jury trial, both sides must want one. Each side must agree to all the rules described in (1), and to waive most appeal rights. The agreements between the parties must be put into writing in a

document called *[Proposed] Consent Order for Voluntary Expedited Jury Trial*, which will be submitted to the court for approval. (Form EJT-020 may be used for this.) The court must issue the consent order as proposed by the parties unless the court finds good cause why the action should not proceed through the expedited jury trial process.

(9)    **Why do I give up most of my rights to an appeal in a voluntary expedited jury trial?**

To keep costs down and provide a faster end to the case, all parties who agree to take part in a voluntary expedited jury trial must agree to waive the right to appeal the jury verdict or decisions by the judicial officer concerning the trial unless one of the following happens:

○   Misconduct of the judicial officer that materially affected substantial rights of a party;

○   Misconduct of the jury; or

○   Corruption or fraud or some other bad act that prevented a fair trial.

In addition, parties may not ask the judge to set the jury verdict aside, except on those same grounds. Neither you nor the other side will be able to ask for a new trial on the grounds that the jury verdict was too high or too low, that legal mistakes were made before or during the trial, or that new evidence was found later.

(10)    **Can I change my mind after agreeing to a voluntary expedited jury trial?**

No, unless the other side or the court agrees. Once you and the other side have agreed to take part in a voluntary expedited jury trial, that agreement is binding on both sides. It can be changed only if both sides want to change it or stop the process or if a court decides there are good reasons the voluntary expedited jury trial should not be used in the case. This is why it is important to talk to your attorney before agreeing to a voluntary expedited jury trial. This information sheet does not cover everything you may need to know about voluntary expedited jury trials. It only gives you an overview of the process and how it may affect your rights. You should discuss all the points covered here and any questions you have about expedited jury trials with an attorney before agreeing to a voluntary expedited jury trial.

CM-110

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |

TELEPHONE NO.:           FAX NO. *(Optional):*

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| CASE MANAGEMENT STATEMENT | | CASE NUMBER: |
|---|---|---|
| **(Check one):** ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000) | ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:           Time:         Dept.:        Div.:        Room:

Address of court *(if different from the address above):*

☐ Notice of Intent to Appear by Telephone, by *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*
      (3) ☐ have had a default entered against them *(specify names):*
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint    *(Describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

CASE MANAGEMENT STATEMENT

Page 1 of 5
Cal. Rules of Court,
rules 3.720–3.730
www.courts.ca.gov

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.  b.   Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐  *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
a.   ☐  The trial has been set for *(date):*
b.   ☐  No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.   ☐  days *(specify number):*
b.   ☐  hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a.   Attorney:
b.   Firm:
c.   Address:
d.   Telephone number:
e.   E-mail address:
☐  Additional representation is described in Attachment 8.

f.   Fax number:
g.   Party represented:

9.  **Preference**
☐  This case is entitled to preference *(specify code section):*

10.  **Alternative dispute resolution (ADR)**

a.   **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.

(1)  For parties represented by counsel: Counsel ☐ has ☐ has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)  For self-represented parties: Party ☐ has ☐ has not  reviewed the ADR information package identified in rule 3.221.

b.   **Referral to judicial arbitration or civil action mediation** (if available).

(1)  ☐  This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2)  ☐  Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3)  ☐  This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c.  Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information):*

| | The party or parties completing this form are **willing** to participate in the following ADR processes *(check all that apply):* | If the party or parties completing this form in the case have **agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation):* |
|---|---|---|
| **(1) Mediation** | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date):*<br>☐ Agreed to complete mediation by *(date):*<br>☐ Mediation completed on *(date):* |
| **(2) Settlement conference** | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date):*<br>☐ Agreed to complete settlement conference by *(date):*<br>☐ Settlement conference completed on *(date):* |
| **(3) Neutral evaluation** | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date):*<br>☐ Agreed to complete neutral evaluation by *(date):*<br>☐ Neutral evaluation completed on *(date):* |
| **(4) Nonbinding judicial arbitration** | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date):*<br>☐ Agreed to complete judicial arbitration by *(date):*<br>☐ Judicial arbitration completed on *(date):* |
| **(5) Binding private arbitration** | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date):*<br>☐ Agreed to complete private arbitration by *(date):*<br>☐ Private arbitration completed on *(date):* |
| **(6) Other** *(specify):* | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date):*<br>☐ Agreed to complete ADR session by *(date):*<br>☐ ADR completed on *(date):* |

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**11. Insurance**
   a.   ☐  Insurance carrier, if any, for party filing this statement *(name)*:
   b.   Reservation of rights:  ☐ Yes  ☐ No
   c.   ☐  Coverage issues will significantly affect resolution of this case *(explain)*:

**12. Jurisdiction**
Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.
   ☐ Bankruptcy  ☐ Other *(specify)*:
Status:

**13. Related cases, consolidation, and coordination**
   a.   ☐  There are companion, underlying, or related cases.
        (1) Name of case:
        (2) Name of court:
        (3) Case number:
        (4) Status:
        ☐  Additional cases are described in Attachment 13a.
   b.   ☐  A motion to  ☐ consolidate  ☐ coordinate  will be filed by *(name party)*:

**14. Bifurcation**
   ☐  The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**15. Other motions**
   ☐  The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

**16. Discovery**
   a.   ☐  The party or parties have completed all discovery.
   b.   ☐  The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|
| | | |

   c.   ☐  The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify)*:

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20. Total number of pages attached** *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____          ▷ _____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY)

_____          ▷ _____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY)

                                                              ☐ Additional signatures are attached.

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and address)* | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:<br>ATTORNEY FOR *(Name):*<br><br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO<br>400 McAllister Street<br>San Francisco, CA 94102-4514<br><br>PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER:<br><br>DEPARTMENT 610 |
|---|---|

1)  **The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐  **Early Settlement Program of the Bar Association of San Francisco (BASF)** - Pre-screened experienced attorneys provide a minimum of 2 hours of settlement conference time for a BASF administrative fee of $295 per party. Waivers are available to those who qualify. BASF handles notification to all parties, conflict checks with the panelists, and full case management. www.sfbar.org/esp

☐  **Mediation Services of BASF** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐  **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐  **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org

☐  **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org

Judge Requested (see list of Judges currently participating in the program): _____

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days   ☐ 90-120 days   ☐ Other (please specify) _____

☐  **Other ADR process (describe)** _____

2)  **The parties agree that the ADR Process shall be completed by (date):** _____

3)  **Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

| | |
|---|---|
| _____<br>Name of Party Stipulating | _____<br>Name of Party Stipulating |
| _____<br>Name of Party or Attorney Executing Stipulation | _____<br>Name of Party or Attorney Executing Stipulation |
| _____<br>Signature of Party or Attorney | _____<br>Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: _____ | Dated: _____ |

☐  *Additional signature(s) attached*

ADR-2  03/15                              STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION

## Experienced mediators are available in the following areas

Business
Civil Rights
Commercial
Construction
Contracts
Disability
Discrimination
Education
Employment/Workplace
Environmental
Family
Family-Certified Specialists
Fee Disputes
Financial
Government
Insurance
Intellectual Property
Intra-Organizational
Labor
Landlord/Tenant
Land Use
LGBT Issues
Malpractice: Legal-Medical-Professional
Partnership Dissolutions
Personal Injury
Probate/Trust
Products Liability
Real Estate
Securities
Taxation
Uninsured Motorist
And more...

## TESTIMONIALS

"This was the third attempt to mediate this case, and the BASF mediator was far and away the best mediator. I dare say that we would not have settled today but for his efforts."

*George Yuhas, Esq.*
*Orrick, Herrington & Sutcliffe LLP*

"We had an excellent experience and, after 8 1/2 hours of mediation, [the BASF mediator] settled a very difficult case involving claims against four clients of ours by a wealthy investor who claimed inadequate disclosure was made."

*Robert Charles Friese, Esq.*
*Shartsis Friese LLP*

"When the other side made their offer, I thought there was no way we would reach an agreement – we were too far apart, but the mediator brought us together. He saved me a lot of time and aggravation by facilitating a settlement. Thanks!"

*Leslie Caplan*
*Global Warming Campaign Manager*
*Bluewater Network*

"BASF staff was very helpful – stayed on the task and kept after a hard to reach party. The mediator was great!"

*Mark Abelson, Esq.*
*Campagnoli, Abelson & Campagnoli*

"The [BASF] mediator was excellent! He was effective with some strong, forceful personalities."

*Denise A. Leadbetter, Esq.*
*Zacks, Utrecht & Leadbetter*



PROCEDURES, PODCASTS, FORMS, MEDIATOR BIOGRAPHIES AND PHOTOGRAPHS:
**www.sfbar.org/mediation**

adr@sfbar.org or
**415-982-1600**



FOR OUTSTANDING ADR SERVICES
Voted into the Hall of Fame In The Recorder's 'Best of' Poll
5 YEARS IN A ROW 2010 - 2014

# MEDIATION SERVICES



THE BAR ASSOCIATION OF
SAN FRANCISCO

# QUALITY　　　　　EXPERIENCE　　　　　TRUST

## WHAT IS BASF'S MEDIATION SERVICE?

The Bar Association of San Francisco's Mediation Services is a private mediation service which will assist you with almost any type of dispute, from simple contract disputes to complex commercial matters.

## WHO ARE THE MEDIATORS?

They are established mediators who have private mediation practices and have met our extensive experience requirements. By going through BASF you receive the services of these highly qualified mediators at a great value.

## HOW DO I LEARN MORE ABOUT THE MEDIATORS?

BASF's website at www.sfbar.org/mediation provides bios, photos and hourly rates of mediators. You can search by name or by area of law needed for your case. BASF staff is always available to assist you with selection or to answer questions.

## HOW MUCH DOES THE SERVICE COST?

A $295 per party administrative fee is paid to BASF at the time the Consent to Mediate form is filed. This fee covers the first hour of mediator preparation time and the first two hours of session time. Time beyond that is paid at the mediator's normal hourly rate.

## HOW IS THE MEDIATOR CHOSEN?

You may request a specific mediator from our website (www.sfbar.org/mediation) and indicate your choice on the BASF Consent to Mediate form, or you may indicate on the form that you would like BASF staff to assist with the selection.

## WHY SHOULD I GO THROUGH BASF? CAN'T I JUST CALL THE MEDIATOR DIRECTLY?

BASF mediators have agreed to provide three free hours as a service to BASF. If you go directly to one of our mediators, you do not qualify for the free hours unless you notify us. Once you have filed with us, you will talk directly to the mediator to ask questions and to set a convenient mediation date and time.

## HOW LONG IS THE MEDIATION SESSION?

The time spent in mediation will vary depending on your dispute. BASF mediators are dedicated to reaching a settlement, whether you need a few hours or several days.

## WHO CAN USE THE SERVICE?

BASF mediation can be utilized by anyone and is NOT limited to San Francisco residents or issues. Also, the service may be used before a court action is filed or at any time during a court action.

## OUR CASE IS FILED IN COURT. HOW DO WE USE BASF'S MEDIATION SERVICES?

When you file the San Francisco Superior Court's Stipulation to ADR form, check the box indicating "Mediation Services of BASF." Then complete BASF's Consent to Mediate form found on our website and file it with us. (If the matter was filed in a different county, please check with that court for the appropriate process.)

## WE ARE ON A DEADLINE; HOW QUICKLY CAN WE MEDIATE?

Once all parties have filed all the paperwork, BASF can normally have you in touch with the mediator within a day or two. If there is a deadline, BASF staff will give the matter top priority.

## WHAT TYPES OF DISPUTES CAN I MEDIATE?

BASF mediators are trained in 30+ areas of law. If you don't see the area you need on our website or in this brochure, contact us; it is very likely we can match your need with one of our panelists.

## MORE INFORMATION

Visit our website (www.sfbar.org/mediation) where you can search by name or by area of law. For personal assistance, please call 415-982-1600.

WWW.SFBAR.ORG/MEDIATION • ADR@SFBAR.ORG • 415-982-1600