# "Exhibit 3"

Carl A. Wescott
PO Box 190875
San Francisco, CA 94119
*in propria persona*
+1 415 335 5000

FILED

JUN 25 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CARL A. WESCOTT<br><br>Plaintiff,<br><br>vs.<br><br>GILA, INC d/b/a MUNICIPAL SERVICES BUREAU; CARLSON & MESSER LLP, TAMAR GABRIEL & DAVID KAMINSKI<br><br>Defendant + DOES 1 to 25 | Case No. 3:18-cv-02829-WHA<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Hearing Date: July 19th, 2018, 8 am |

Plaintiff Carl A. Wescott, proceeding *pro se*, responds to and opposes the Defendants' Motion to Dismiss pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure and in support of his opposition, the Plaintiff offers this concise Memorandum of Points & Authorities.

1. Introduction

    **a.) Factual Summary**

    Defendant Gila, Inc. d/b/a Municipal Services Bureau ("Gila") is a debt collector that willfully violated the Plaintiff's automatic stay in bankruptcy. Gila, through its attorneys and agents *purported* to settle the Plaintiff's claim for $2,500. The Plaintiff, battling homelessness during the period relevant to this complaint, was happy to settle and eager to receive payment which would have had a material positive impact on his life. The parties' agreement called for the Plaintiff to receive payment within twenty days, in September 2017.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** 1

Gila did not even attempt to meet this deadline. Instead, Gila, through its attorneys, kept putting hurdles in the way of payment and kept delaying payment even though they were made aware of the Plaintiff's dire circumstances and desperate need for the money. Their pattern of evasion, deception and delay can only be understood, in context, as a continued campaign of harassment against the Plaintiff launched in retaliation for his having had the temerity to exercise his rights as a debtor. Gila's intention – clear from the totality of its actions – was to inflict the maximum anxiety and hardship on the Plaintiff to punish him for his Bankruptcy filing and his adversary action. Gila, through the expert efforts of its incumbent counsel did in fact inflict serious damage on the Plaintiff. Ms. Tamar Gabriel and Mr. David Kaminski, no fewer than a 15 times between September 2017 and April 2018, did contact the Plaintiff, waving a check or money order (virtually), taunting the Plaintiff, and stating that they would pay imminently, but they never had the intent of making the payment. The parties conspired to torture the Plaintiff for his temerity for filing his claim.

Ultimately, the Defendants only paid Plaintiff after this lawsuit was filed and the individual attorney defendants were served with it in April 2018, seven months after the September 2018 settlement. Suddenly the attitude changed, and finally, Plaintiff received his payment. Finally sending the payment does not change the harassment, taunting, or other acts including the intentional inflection of emotional distress by the Defendants.

Counsel's expertise in harassment has been harnessed to impressive cumulative effect in connection with this interesting filing. Not counting every sub-argument, the Plaintiff has counted *thirteen* distinct arguments referenced, if not exactly developed, by the Defendants in their attack on the Complaint. Some of the arguments are borderline frivolous; some cross that border. At least two arguments squarely contradict each other. Most such arguments rely on

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

2

implicit, if not explicit, factual assumptions that are improper at the 12(b)(6) stage.

The Plaintiff will attempt to be concise in dealing with this juristic fusillade. Fortunately, with due respect to counsel, most of the Defendants' arguments lend themselves readily to summary disposition. The Plaintiff acknowledges the energy if not the precision of the attacks.

**b.) Legal Standard**

It may be helpful to restate the framework for evaluating a 12 (b)(6) Motion. In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132F.3d 1359, 1367 (11th Cir. 1998). Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original). Accordingly, the Defendants face a formidable initial hurdle in presenting their Motion.

2. The Plaintiff's Status as a State Court Vexatious Litigant is Irrelevant to these Proceedings

First, the Defendants – *who removed this action to Federal Court in the first place* – argue that this Court should dismiss the Complaint because an amendment may have been filed in violation of CCP 391.7(a). The Plaintiff obtained approval for his initial filing. Had he not, the State Court remedy is not dismissal but a Stay until the Plaintiff obtains proper approval, as per 391.7(b).

However this is classically a moot point. The Plaintiff is not a vexatious litigant in

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** 3

Federal Court. The standard for declaring a litigant to be vexatious is higher in the Ninth Circuit than it is in the California State system. *Ringold-Lockhart v. City of Los Angeles*, 761 F.3rd 1057 (2014). The Defendants made a tactical choice in removing this case. They could have stayed in the State system where the Plaintiff is subject to CCP 391.7. They chose to move to the Federal system where there is simply no basis to dismiss the complaint.

This is not an argument that the Defendants can make seriously and advancing it is simply one more example of harassment directed against this Plaintiff. This argument may be sanctionable, and is certainly frivolous for experienced attorneys to make.

3. The Plaintiff does Not Seek to Collaterally Attack the Bankruptcy Court Order

The collateral attack doctrine prevents litigants from re-litigating the merits of previously decided claims. *Americopters, LLC v. FAA* 441 F.3rd 726, 736 (9th Cir. 2006). It is true that the Bankruptcy Court entered a November 17, 2017 Order enforcing the parties' settlement agreement.[1] However, the gravamen of the Plaintiff's complaint is not that the Bankruptcy Court's Order was erroneous but that the Defendants proceeded to violate the settlement agreement that they had sought to enforce and to commit related torts. The Plaintiff is not challenging the Bankruptcy Court's Order but is rather seeking damages for the Defendants' conduct in making a mockery of the Court's Order.

4. Gila is Properly Liable for the Acts of its Attorneys

The Defendants contend, without a shred of authority, that Gila may not be liable for the acts of its attorneys. The Restatement of Agency, at 265, expressly provides that a principal is liable for the torts of an agent with apparent authority – certainly Gila's designated lawyers had

---

[1] It is worth noting that the *ex parte* motions and hearings both occurred after the Plaintiff informed Ms. Gabriel in writing he would be unavailable. Ms. Gabriel then chose to have two *ex parte* hearings, knowing that the Plaintiff could not participate.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** 4

at *least* apparent authority to conduct negotiations and make promises to the Plaintiff. The Restatement is consistent with the California position which is that the knowledge of the attorney is imputed to the client *Kelly v. British Com Ins. Co.*, (1963) 221 Cal.App.2nd 554 560-561 and that the attorney is the agent for the client in business transactions. *Tomerlin v. Canadian Indemnity Co.* (1964) 61 Cal.App.2nd 638, 643.

Accordingly, under basic agency principles accepted in California, the knowledge of Gila's lawyers as to the Plaintiff's desperate situation is imputable to Gila and Gila conferred at least apparent authority on its attorneys. The Plaintiff is confident that discovery will also reveal that Gila expressly ratified its attorneys' misconduct.

5. <u>Defendant Gila is Properly Liable Under 26 USC 7434</u>

Perhaps the most opaque argument the Defendants make is that Gila may not be liable under 26 USC 7434 because it is not a "filer" of an "information return". The logic of this argument, unadorned by authority, is captured on p. 14 of the Defendants' sprawling MPA:

> The tax consequences, if any, of the 1099-MISCs run directly with the individual reporting the income on his personal taxes and **not** the person issuing the 1099-MISCs. (Emphasis in original).

Defendant Gila utterly bizarrely argues that the purpose of 7434 is to punish the filer of the *tax* return as opposed to the *information* return.

The IRS specifically informs filers of 1099s that they are subject to liability under 7434 for the filing of false information returns. See 2018 IRS Instructions for Certain Information Returns at page 20. See also *Cavoto v. Hayes*, 634 F.3rd 921 (7th Circuit 2011).

The argument that Gila, as the filer of a false 1099 MISC may not be liable under 7434 is patently frivolous and the Plaintiff contends that this argument should also be sanctionable.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** 5

6. <u>The Defendants' Anticipatory Repudiation Argument *is* a Collateral Attack on the Bankruptcy Court's Order</u>

Even more frivolously[2], the Defendants argue that: (a) the Plaintiff repudiated the parties' contract by refusing to provide a W-9, therefore (b) releasing Gila from its contractual obligations.

One threshold problem with this argument is that at p. 9 of their MPA, the Defendants contend that they filed a Motion to *Enforce* the settlement agreement *as a result* of the Plaintiff's purported refusal to provide a W-9 and that their Motion was granted on November 17, 2017. It is at best glib and unconvincing that the refusal to provide a W-9 amounted to a repudiation since the parties' contract did not expressly call for the provision of that document. But even if the Plaintiff had repudiated, the Defendants elected their remedy and that was to enforce the contract. They cannot now attempt to invoke the inconsistent remedy of rescission that would represent a direct collateral attack on the Order they procured:

> It is also undoubtedly the law that where a person entitled to one of two inconsistent remedies performs some act in pursuit of one of the alternative remedies by which he gains an advantage over the other party, on the principles of estoppel, he will be held to have made an irrevocable election of remedies. (De Laval Pac. Co. v. United C. & D. Co., 65 Cal. App. 584 [224 P. 766].

In this case, the Defendants pursued the remedy of enforcement by which they obtained an advantage. They now purport to excuse their breach of contract on the grounds that the contract which they succeeded in enforcing was repudiated before the Court enforced it and is hence a nullity. This defies elementary logic and the California law of election of remedies.

---

[2] This entire line of argument is entirely improper in a 12 (b)(6) motion as it relies heavily on extraneous facts to defeat the complaint. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452, 2018 WL 843288 (Fed. Cir. Feb. 14, 2018)

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**　6

### 7. The Plaintiff Adequately Pleads Fraud and Liability For Fraud is Not Barred by the Litigation Privilege

The Complaint states, at par. 23:

> From the beginning of October, 2017 to the day of filing this now Amended Complaint under CCP 472, (March 20th, 2018) Gila, through attorney Gabriel and her supervisor, Carlson partner Kaminski reassured Plaintiff Wescott on at least 15 occasions that Gila would remedy its breach and perform under the terms of the parties' contract: (Collectively "Gila's False Promises")

The Plaintiff believes that this level of particularity suffices under the Rules but if the Court does not find it to be sufficient he can amend to enhance the level of detail as there were literally scores of pertinent conversations and an email record that is at least as robust. As a matter of California law, promissory fraud is a viable cause of action. See CACI 1902.

The Defendants conjunctively argue that the Plaintiff's Fraud claim is indistinguishable from his Contract claim and hence the Plaintiff cannot recover "tort" damages. This flies directly in the face of California Supreme Court precedent:

> "Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury [citation]; for breach of the covenant of good faith and fair dealing in insurance contracts [citation]; for wrongful discharge in violation of fundamental public policy [990] [citation]**; or where the contract was fraudulently induced**. [Citation.]" (Erlich v. Menezes, supra, 21 Cal.4th at pp. 551–552.) "[I]n each of these cases, the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm. [Citation omitted]. *Robinson Helicopter Co. Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 993 (emphasis added).

The Plaintiff alleges fraudulent inducement, which justifies tort damages.

Finally, as to this point, the Defendants argue that the litigation privilege precludes the Plaintiff's cause of action for fraud. This is incorrect. A Plaintiff fraudulently induced entering into a release may sue for fraud and, under extraordinary circumstances, is not required to rescind and restore consideration. *Brodie v. Worker's Comp Appeals* Board, (2007) 40 Cal.4th 1313, 1325 *Carruth v. Fritch* (1950) 36 Cal. 2nd 426 (reaffirmed as good law by the Supreme

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** 7

Case 3:18-cv-02829-WHA Document 17 Filed 06/25/18 Page 9 of 14

Court in *Homeowner's Association v. State Farm Fire & Casualty Company*, (2010) 50 Cal.4th 913. The litigation privilege clearly does not immunize the fraudulent inducement to settle.

### 8. The Plaintiff has Stated a Claim for Breach of the Covenant of Good Faith & Fair Dealing

Incredibly, the Defendants attempt to blur the distinction between a case for breach of contract and a case for breach of the covenant of good faith and fair dealing. The Defendants cite three cases for the proposition that California does not recognize a cause of action for breach of the covenant of good faith and fair dealing absent an express breach of contract. None of the cases cited by the Defendants stand for this proposition. Rather, they stand for the unremarkable proposition that absent a contractual duty (e.g. the duty to defend in *Waller v. Truck Ins. Exchange*, (1995) 11 Cal.4th 1, 35-36) there is no breach of the covenant of good faith.

Here, the agreement of the parties indisputably imposed a duty on the part of the Defendants to pay the agreed amount to the Plaintiff. The Defendants were vested with some discretion in the manner and timing of the payment. It is the misuse or abuse of this contractual discretion that the covenant of good faith prohibits.

An exemplary case is *Locke v. Warner Brothers*, (1997) 354 Cal.App.4th 354. Sandra Locke was Clint Eastwood's companion. She was also a movie director. Her relationship with Clint Eastwood – a personage of some importance to Warner Brothers – ended acrimoniously. Ms. Locke had a "pay or play" contract with Warner Brothers. She was to receive a minimum fee or be paid for services in connection with projects accepted by Warner Brothers. **Warner Brothers had no express contractual obligation to accept any proposal**. Warner Brothers turned down every proposal from Ms. Locke and she adduced evidence suggesting that the denials were motivated by a desire to placate Mr. Eastwood. The Court observed:

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** 8

> [W]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing.' [Citations.]" (Perdue v. Crocker National Bank (1985) 38 Cal.3d 913, 923, 216 Cal.Rptr. 345, 702 P.2d 503; accord Kendall v. Ernest Pestana, Inc. (1985) 40 Cal.3d 488, 500, 220 Cal.Rptr. 818, 709 P.2d 837.) It is settled that in " 'every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.' " (Kendall, supra, at p. 500, 220 Cal.Rptr. 818, 709 P.2d 837; accord Waller, supra, 11 Cal.4th at p. 36, 44 Cal.Rptr.2d 370, 900 P.2d 619.)

The Court went on to reverse a summary judgment in the studio's favor on the grounds that the studio was not exercising its discretion to evaluate the merits of Ms. Locke's projects honestly but was rather misusing its discretion to reject all her projects regardless of the merits in order to keep Mr. Eastwood happy.

In the instant case, Gila had an obligation to pay the Plaintiff and some discretion, under the terms of the contract, as to the precise form and timing of the payment. Gila misused its discretion to drag out payment and then to send a check to the Plaintiff's PO Box at a time its lawyers knew he would be unavailable to retrieve it. Gila insisted on sending a check, drawn on a local (to it – out of state to Plaintiff) bank, that would be impossible, as a practical matter, for the Plaintiff to negotiate. In other words, while Gila's conduct was not an express breach of the terms of the contract (in the same way that Warner Brother's did not expressly breach its contract with Ms. Locke) Gila demonstrated toxic bad faith in the exercise of its contractual discretion, knowingly, willfully, and with the ultimate purpose of depriving the Plaintiff of his bargained-for benefit. If Gila had not been contractually obligated to pay at all, no covenant of good faith could have been breached – this is the only proposition that the cases Gila cites, stands for. But once there is a contractual duty, and discretion associated with that duty, the discretion may not be exercised in such a way as to deprive the contractual counter-party of his contractual benefit. That is precisely what occurred in connection with this payment.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**  9

### 9. The Plaintiff has Stated Claims Under the FDCPA Sounding in Retaliation & Coercion

The Defendants fundamentally misapprehend the nature of the Plaintiff's claims under the Fair Debt Collection Practices Act ("FDCPA"). While it is true that the settlement agreement was not, *itself* a transaction within the meaning of the FDCPA, the Plaintiff is alleging that the Defendants' intentional mishandling of his settlement represents retaliation for his Bankruptcy filing in relation to the actual transaction which was related to Plaintiff's consumer debt. Actions taken to coerce a debtor for exercising his right to file Bankruptcy (and implicitly to collect an enjoined debt) may be actionable under both the Bankruptcy law and the FDCPA. *In Re Lumb*, 401 BR 1, 6 (B.A.P. 1st Cir. 2009).

(The Plaintiff is not quite *certain* that the Defendants labor under a misapprehension because at p. 23 of the Defendants' MPA they appear to concede that they are debt collectors, with a qualified privilege to protect their economic interests which may be exceeded by outrageous conduct. On p. 21, the Defendants deny the existence of a debt transaction for purposes of the FDCPA, but on page 23, they seek the status of debt collectors in order to clothe themselves with a qualified privilege. When we consider this reversal in conjunction with the Defendants' simultaneous claim that the Plaintiff is collaterally attacking an Order enforcing settlement and the Defendants are released from any settlement obligations by virtue of the Plaintiff's "anticipatory repudiation" [itself requiring reference to a myriad of extrinsic facts improper in as 12 (b)(6) context] we see that the only consistency in the Defendants' position is their cavalier willingness to shamelessly contradict their own arguments if they perceive an advantage from doing so.)

Accordingly, the Defendants laborious citation of cases for the proposition that the FDCPA requires an underlying debt transaction and acts to collect same are unavailing. The

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** 10

Plaintiff's case is not based on the settlement agreement *as such* but rather on the Defendants' retaliatory and coercive conduct intended to punish and intimidate the Plaintiff for availing himself of Bankruptcy protection. The Defendants' refusal to respect the Bankruptcy process is itself independently actionable under the FDCPA. *Crawford v. LVNV Funding, LLC*, 758 F.3rd 1254, 1257 (11th Cir. 2014).

10. <u>The Plaintiff has Stated a Claim for Intentional Infliction of Emotional Distress</u>

The Defendants disingenuously suggest that the Plaintiff has alleged only a breach of contract claim. But the Complaint at pars. 43-46 makes it abundantly clear that the Plaintiff was battling literal homelessness; that the Defendants were well aware of the Plaintiff's situation; that the $2,500 contractually due made the difference between a fresh start and a homeless shelter; and that the Defendants interminably delayed payment and finally sent payment at a point in time that the Defendants' *knew* the Plaintiff could not receive it and in a form (local bank check) that the Defendants realized the Plaintiff could not negotiate.

As a threshold matter, since these actions are unambiguously non-communicative in nature, the litigation privilege would not apply. *Kimmel v. Goland*, (1990) 51 Cal.3rd 205. Hence the precedent cited by the Defendants, *Hampton-Stein*, which was based on litigation *communications* is inapposite.

On the issue of outrageousness at least one Court has expressly held that causing or prolonging a condition of homelessness would inevitably lead to humiliation and is thus sufficiently outrageous to sustain a cause of action for Intentional Infliction of Emotional Distress. *Weaver v. A-American Storage Management Inc.*, Civil No. 10-00600 JMS-KSC (D. Hawaii, 2011). The issue is not whether "making successive promises to pay" is outrageous; the issue is whether intentionally delaying payment and ensuring that payment was sent within a

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** 11

Case 3:18-cv-02829-WHA Document 17 Filed 06/25/18 Page 12 of 14

time frame and in a form as to make it inaccessible to the Plaintiff *with knowledge that the Plaintiff's non-receipt of payment would be devastating in his homeless state* is outrageous conduct. The Defendants could have sent payment within twenty days; could have sent payment from a national bank or via money order; and could have been mindful of the Plaintiff's travel schedule which he shared with them. Instead, they acted to sabotage payment, not to effectuate payment, knowing that the result would be to humiliate the Plaintiff.

Such conduct is manifestly outrageous as it is detached from any litigation related "communication". As such it is actionable.

11. <u>Noerr-Pennington Does Not Confer Immunity on Defendants</u>

The Defendants may be said to have saved the least for last – and given the plethora of marginal arguments they offer, this is a significant, albeit dubious distinction.

The Noerr-Pennington doctrine extends constitutional protection to bona fide "petitioning" activity – in this case, the filing of lawsuits – primarily in the antitrust context, but in any event in the context of competitive injuries. *Allied Tube & Conduit Corp v. Indian Head, Inc.*, (1988) 486 US 492, 499. Obviously the Plaintiff is not in a competitive relationship with the Defendants.

But even if a Court *were* to extend the Noerr-Pennington to a creditor/debtor relationship the sham litigation exception would be fatal to the Defendants' argument. *California Motor Transport v. Trucking Unlimited*, (1972) 404 US 508. <u>Gila was a Defendant that violated the Plaintiff's automatic stay</u>. Gila did not initiate litigation or petition anyone; rather Gila attempted to enforce a debt in violation of a federal injunction. Caught red-handed and in an indefensible position, Gila then threw up its hands and settled, only to sabotage any benefit that the Plaintiff was to receive from the settlement agreement.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** 12

Gila did not "petition" at all; it was guilty of contumacious and tortious out-of-court activities and when hauled into Court immediately writhed to get off the hook. Consider the implications of Gila's argument. In Gila's universe, a creditor may violate a Bankrupt debtor's automatic stay at will and, when caught, may then offer to settle only to cheat the debtor out of his settlement. This course of conduct, Gila's inventive attorneys argue, is protected by the First Amendment as "petitioning" activity. Of course, such an interpretation would eviscerate the automatic stay since a violator may settle and, with *constitutional protection*, breach the settlement.

Noerr Pennington is not available for a harassing creditor and, if it were available, it could not be used as cover for a settlement fraud.

12. Conclusion

The Defendants do throw one more ingredient into their stew of a Motion; an *ipse dixit* contention that the Plaintiff cannot amend under any circumstances. This assumes that the Defendants have laid a glove on the Plaintiff, not an obvious proposition by any means.

This case is about a fraudulently induced and outrageously breached settlement agreement, solicited by the Defendants and then violated *with the intent of rendering and keeping the Plaintiff homeless*, in retaliation for his Bankruptcy. The conduct involved does not even implicate the litigation privilege, which would be of questionable initial utility in the context of a violation of the Plaintiff's automatic stay.

Some of the arguments proffered by the Defendants are shameless. The Defendants choose to remove from state court, where the Plaintiff is on the Vexatious Litigant list, to Federal Court, where he is not, and then ask this Court to dismiss the Plaintiff under (misstated) state law guidelines. The Defendants ignore the plain language of 7434 to argue – utterly incoherently –

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** 13

that the statute applies only to filers of *tax* returns instead of, as the statute states, filers of *information* returns. The Defendants conflate breach of contract with breach of the covenant of good faith as if the two are identical.

In certain cases, e.g. the "anticipatory repudiation" argument, the Defendants go into evidentiary detail that is far beyond what a 12 (b)(6) Motion will permit. In others they are happy to have one argument contradict another.

The Defendants argue, less frivolously that they are entitled to more precise detail concerning their fraudulent representations. The Plaintiff believes he has offered sufficient detail; if more is required, he can provide it including emails. In such a case amendment is clearly not unavailing.

The Defendants' litigation filing is almost as abusive and harassing as their collection tactics. Their Motion should be denied and the Defendants should be sanctioned.

RESPECTFULLY SUBMITTED

_____
Carl A. Wescott, *pro se*   6/25/2018

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**   14